467 A.2d 1294

**BOROUGH OF NEW CUMBERLAND**

**v.**

**POLICE EMPLOYEES OF the BOROUGH OF NEW CUMBERLAND, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1983.

Decided Dec. 1, 1983.

Richard Kirschner, Jonathan Walters, Philadelphia, for Pa. State Fire Fighters Ass'n.

D.R. Pellegrini, City Sol., Bernard M. Schneider, Asst. City Sol., Pittsburgh, for City of Pittsburgh.

Stanford A. Segal, Pittsburgh, for Pittsburgh Fire Fighters.

Jerome H. Gerber, Elliot A. Strokoff, Harrisburg, for Pa. AFL–CIO.

Gary M. Lightman, P. Richard Wagner, Harrisburg, for appellant.

Thomas Beckley, Harrisburg, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHER-TY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

ROBERTS, Chief Justice.

This is an appeal by allowance from an order of the Commonwealth Court, 63 Pa.Cmwlth. 441, 439 A.2d 849, reversing an order of the Court of Common Pleas of Cumberland County which upheld an arbitration award entered by a three-member arbitration board pursuant to "Act 111," Act of June 24, 1968, P.L. 237, § 1 et seq., 43 P.S. § 217.1 et seq. (Supp.1983). The Commonwealth Court construed Act 111 to require impartiality on the part of all three arbitrators, and thus invalidated the award on the ground that the arbitrator appointed by appellant, Police Employees of the Borough of New Cumberland, had consulted with the Police and had actively sought to advance their interests during the panel's deliberations. The Commonwealth Court also held that the award was void because the arbitration board did not render an award within thirty days of the appointment of its third member. Because the Commonwealth Court has misconstrued Act 111, we reverse.

The Police and appellee, the Borough of New Cumberland, were parties to a labor contract which expired on December 31, 1978. In 1978, after an impasse had been reached in the negotiation of a new contract, the Police invoked their right under Act 111 to have the contract dispute resolved through binding arbitration. See *Borough of New Cumberland v. Police Employees of New Cumberland,* 51 Pa.Cmwlth. 435, 414 A.2d 761 (1980).

The composition of arbitration panels convened pursuant to Act 111 is governed by section 4(b) of the Act, which provides:

"The board of arbitration shall be composed of three persons, one appointed by the public employer, one appointed by the body of policemen or firemen involved, and

a third member to be agreed upon by the public employer and such policemen or firemen. The members of the board representing the public employer and the policemen or firemen shall be named within five days from the date of the request for the appointment of such board. If, after a period of ten days from the date of the appointment of the two arbitrators appointed by the public employer and by the policemen or firemen, the third arbitrator has not been selected by them then either arbitrator may request the American Arbitration Association or its successor in function, to furnish a list of three members of said association who are residents of Pennsylvania from which the third arbitrator shall be selected. The arbitrator appointed by the public employer shall eliminate one name from the list within five days after publication of the list, following which the arbitrator appointed by the policemen or firemen shall eliminate one name from the list within five days thereafter. The individual whose name remains on the list shall be the third arbitrator and shall act as chairman of the board of arbitration. The board of arbitration thus established shall commence the arbitration proceedings within ten days after the third arbitrator is selected and shall make its determination within thirty days after the appointment of the third arbitrator."

43 P.S. § 217.4(b).

In accordance with the above provision of the Act, the Borough selected Thomas A. Beckley, Esquire, who represents appellee on this appeal. Beckley was later replaced by Richard W. Stewart, Esquire,[1] and the Police selected a second arbitrator, Thomas J. Garvey, Esquire. The third member, Charles E. Freeman, Esquire, was selected by both party-appointed arbitrators, and designated chairman on April 10, 1979.

---

1. While serving as arbitrator for the Borough, Beckley noted in a letter addressed to counsel for the Police, "What we have done in the past in these matters, to be very candid, is simply to have the attorneys for each of the parties designated as the arbitrator...."

The three-member board held its first hearing on May 17, 1979, at which both the Borough and the Police participated and presented evidence. Following that hearing, the board met again and agreed that the two party-appointed arbitrators should attempt to resolve outstanding issues. Both party-appointed arbitrators then executed written waivers of the provision of section 4(b) of the Act which requires the board to "make its determination within thirty days after the appointment of the third arbitrator." 43 P.S. § 217.4(b). On July 6, 1979, an award was signed by the board over the dissent of the arbitrator appointed by the Borough.

The Commonwealth Court's determination that Act 111 requires impartiality on the part of party-appointed members of the board was based on references in section 4(b) to the party-appointed members as "arbitrators." According to the Commonwealth Court,

"[a]n 'arbitrator' is described in Black's Law Dictionary 135 (rev. 4th ed. 1968) as '[a] private, disinterested person, chosen by the parties to a disputed question, for the purpose of hearing their contention, and giving judgment between them; to whose decision (award) the litigants submit themselves either voluntarily, or, in some cases, compulsorily, by order of a court.' (Citation omitted.) In matters submitted to arbitration we believe it is the 'disinterest' of the arbitrators that gives vitality to the arbitration process."

63 Pa.Cmwlth. 441, 446, 439 A.2d 849, 852 (1981).

■ The Commonwealth Court's determination is contrary to the language and evident purposes of Act 111. Section 4(b) gives each of the parties seeking a resolution of a labor dispute the power to "appoint" one arbitrator, qualified only by the additional statutory requirement that the appointment is to be made within five days of a request for binding arbitration. By contrast, the third member of the panel, designated as its chairman, is to be "agreed upon" by the party-appointed arbitrators or, should the arbitrators be unable to agree, chosen by a process of eliminating names from a list supplied by the American

Arbitration Association. When compared with the statutorily prescribed method for the selection of the board's third member, the statutorily prescribed method for the selection of the board's first two members reveals a clear legislative intent to facilitate the resolution of the parties' dispute by conferring upon each party the unfettered discretion to select the arbitrator of its choice. Indeed, in requiring the parties to make prompt appointments to the board, section 4(b) expressly characterizes the persons appointed to the board by the parties as *"representing* the public employer and the [public employees] (emphasis added)." See also 43 P.S. § 217.8 (compensation of the board member appointed by the public employer and of the third member shall be paid by the public employer, whereas "[t]he compensation, if any, of the arbitrator appointed by the [public employees] shall be paid by them").

■ Prior to the enactment of Act 111, there had developed "a common acceptance," in the words of the Court of Appeals of New York, "of the fact that . . . party-designated arbitrators are not and cannot be 'neutral', at least in the sense that the third arbitrator or judge is." *Astoria Medical Group v. Health Insurance Plan of Greater New York*, 11 N.Y.2d 128, 133, 227 N.Y.S.2d 401, 403, 182 N.E.2d 85, 87 (1962). Such a procedure is advantageous because

"[p]arties may be unwilling to yield total control of the disposition of their disputes to tribunals picked by others . . . . The parties' true interests and demands, . . . as opposed to their formal and frequently distorted public positions, can be most effectively brought before tribunals by party appointees. The presence of party appointees can further the mutually acceptable disposition of disputes that lie beyond the competence of the ordinary all-neutral tribunal because of the absence of justiciable issues, of their complexity, or the intimate knowledge of all aspects of the controversy that a sound decision would require."

Note, "The Use of Tripartite Boards, in Labor, Commercial, and International Arbitration", 68 Harv.L.Rev. 293, 339

(1954). See generally C. Davis Administrative Law, § 12.01 at 157 (1958) ("In tripartite tribunals, two members are frankly partial or partisan and only the third member is in theory or fact impartial or neutral"); L. Fuller, The Forms and Limits of Adjudication, 92 Harv.L.Rev. 353, 369–97 (1978). As the Legislature clearly designed Act 111 in recognition of the desirability of permitting each party to select a board member who will "represent" its interests, and whose expertise, reliability, and sense of judgment the party trusts, the Commonwealth Court's determination that Act 111 requires impartiality of party-appointed members must be rejected.[2]

■■■ The Commonwealth Court's alternative holding, that the award is void because the arbitration board did not render a decision within thirty days of the appointment of its third member, must also be rejected. In *International Association of Firefighters v. City of Johnstown*, 468 Pa. 96, 360 A.2d 197 (1976), this Court held that the provision of Act 111 requiring requests for arbitration to be submitted at least 110 days prior to the start of the political subdivision's fiscal year, though "mandatory," does not preclude binding arbitration under the Act where one party's "dilatory procedure" caused the other party's inability to meet the Act's time requirements. 468 Pa. at 99, 360 A.2d at 198. Here, both party appointed arbitrators, with the approval of the board's chairman, explicitly waived the thirty-day requirement in an effort to reach a mutually acceptable solution. Consistent with *Firefighters*, a party whose representative has acquiesced in the extension of proceedings beyond the thirty days specified in section 4(b) may not be

2. Article III, section 31 of the Pennsylvania Constitution authorized the enactment of Act 111. It should be noted that article III, section 31 nowhere specifies that board members are to be "disinterested"; that section states only that "the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties ...."

permitted to nullify an award rendered by the binding arbitration procedures mandated by Act 111.

The order of the Commonwealth Court is reversed and the award entered by the board of arbitration is reinstated.